UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATHESON TRI-GAS, INC.,

    Plaintiff,

v.                                                                        CASE NO: 8:11-cv-401-T-23MAP

JOHN SHEEHAN, JOEL RENTZ, and
VETERAN'S ACQ., INC.,

    Defendants.
_____/

## **ORDER**

The plaintiff sues (Doc. 1) and alleges fraudulent concealment, aiding and abetting both a breach of fiduciary duty and a breach of the duty of loyalty, conspiracy to commit fraud, tortious interference, conversion, and unjust enrichment. The defendants move (Doc. 7) to dismiss, and the plaintiff responds (Doc. 12) in opposition.

### Allegations of the Complaint

In 1996, the plaintiff Matheson Tri-Gas, Inc., ("Tri-Gas") formed with Air-Tech of Pasco Partners, LLLP, ("Air-Tech") a partnership named Tri-Gas Technologies (the "partnership"). The written partnership agreement[1] allocated seventy percent of the partnership's equity to Tri-Gas and thirty percent to Air-Tech. The defendant John Sheehan is a general partner of Air-Tech and was the president and chief executive

---

[1] Tri-Gas and Air-Tech amended the partnership agreement several times and signed the final, applicable agreement on April 25, 2008. The defendants attach the April, 2008, agreement (Doc. 7-1) to the motion to dismiss, and because the agreement is both central to Tri-Gas's claim and undisputed, the agreement is properly considered in resolving the motion to dismiss. Ware v. Polk County Bd. of Com'rs, 394 F. App'x 606, 608 (11th Cir. 2010) (quoting Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005)).

officer of the partnership until November, 2009.  The defendant Joel Rentz is a general partner of Air-Tech and was the vice-president of the partnership until November, 2009.  The defendant Veteran's Acq., Inc., ("Veteran's") is a Florida corporation owned by both Sheehan and Rentz.

On April 15, 2009, Air-Tech announced a default and alleged that Tri-Gas breached Section 2.7(d) of the partnership agreement by entering a purchase agreement to acquire certain assets of a "competing business in the area" (as defined by Section 2.7).  Section 2.7(d) obligated Tri-Gas to first submit the opportunity to the partnership.  Air-Tech sent a second default notice to Tri-Gas on April 22, 2009.  After receiving the default notices, Tri-Gas commenced discussions with Air-Tech to determine the future of the partnership.  During the discussions, (1) Tri-Gas completed the asset purchase from the competing business and (2) Tri-Gas and Air-Tech entered a "standstill agreement,"[2] in which each partner agreed not to pursue a right or remedy against the other.  As a result of Tri-Gas's completing the asset purchase, Air-Tech alleged that Tri-Gas became a "withdrawing partner" as defined in Section 7.3.  The partnership agreement permitted Air-Tech (as the "non-withdrawing partner") to force Tri-Gas either to purchase Air-Tech's thirty percent partnership interest or to sell Tri-Gas's seventy percent interest in accord with a prescribed formula.  Unable to resolve the matter, Tri-Gas terminated the standstill agreement.  On October 7, 2009, Air-Tech decided to terminate the partnership and to purchase Tri-Gas's partnership interest.  On

---

[2] (Doc. 7-2)

November 16, 2009, Tri-Gas assigned[3] Tri-Gas's partnership interest to Veteran's at the direction of Sheehan and Rentz in exchange for $18,801,494.00.

After the assignment, Tri-Gas learned that Air-Tech, Sheehan, and Rentz had—before termination of the standstill agreement—"surreptitiously marketed for sale all of the assets of the partnership" to a third-party, Airgas, Inc. ("Airgas"). Air-Tech agreed to sell the partnership assets for $52,235,000.00, plus "an assumption of certain partnership liabilities and subject to certain adjustments." Neither Air-Tech nor Sheehan nor Rentz disclosed to the opportunity or the asset purchase agreement Tri-gas. Air-Tech, Sheehan, and Rentz closed the asset sale agreement with Airgas on November 16, 2009—the same day as the assignment of Tri-Gas's partnership interest. Tri-Gas discovered the terms of the sale in July, 2010, when the partnership's accountant mailed to Tri-Gas a tax form that showed a taxable gain to Tri-Gas of $18,000,000.00, which Tri-Gas never received. The accountant provided Tri-Gas a copy of the asset purchase agreement. Tri-Gas neither consented to the asset purchase agreement nor received a distribution.

## Discussion

In moving for dismissal, Air-Tech argues (1) that the complaint qualifies as an impermissible "shotgun pleading," (2) that Tri-Gas failed to join an indispensable party, (3) that the claims against Sheehan and Rentz fail under Florida partnership law, (4) that the claim for tortious interference fails because Sheehan and Rentz acted in the interest if Air-Tech, (5) that Tri-Gas fails to state a claim for conversion, (6) that the

---

[3] (Doc. 7-3)

contract between the parties precludes a claim for unjust enrichment, and (7) that the Florida Supreme Court recognizes no claim for "aiding and abetting fraud."

*1. Shotgun Pleading*

Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001), describes a "quintessential 'shotgun' pleading" in the following manner:

> It is in no sense the "short and plain statement of the claim" required by Rule 8[,] . . . Federal Rules of Civil Procedure. It is fifty-eight pages long. It names fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of. Each count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'—which comprises 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts.

In this instance, although each count incorporates by reference each factual allegation and each allegation of every preceding count, the complaint falls exceedingly short of a "'shotgun' pleading". The complaint alleges discrete claims in separate counts and distinguishes among the three defendants. The complaint contains thirty-three factual allegations and provides a "short and plain statement of the claim". Accordingly, the defendants' request for dismissal of the complaint as a "shotgun pleading" is unpersuasive.

*2. Required Parties Under Rule 19*

Rule 19, Federal Rules of Civil Procedure, requires joinder of a party (who is both diverse and amenable to service of process) if:

> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (I)   as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

In this instance, the defendants argue that Air-Tech is an indispensable party (1) because Air-Tech is the only entity that "committed a direct breach of duty owed to [Tri-Gas]," (2) because Air-Tech is an active limited liability limited partnership, (3) because Air-Tech has an interest "relating to the subject of the action," and (4) because Sheehan and Rentz may suffer "multiple or inconsistent obligations" as a result of Air-Tech's interest (i.e., that if Tri-Gas fails to prove Sheehan and Rentz's liability in this action, Tri-Gas may pursue Air-Tech in another action and attempt to recover a judgment from Sheehan and Rentz). In response, Tri-Gas argues (1) that, because Air-Tech acted solely through Sheehan and Rentz and because Air-Tech is a "shell entity," Air-Tech possesses no separate interest to protect; (2) that, assuming Tri-Gas prevails and recoups the $18 million owed to Tri-Gas, Air-Tech owes Tri-Gas nothing; (3) that no precedent requires joinder of all tortfeasors in a single action; (4) that, to the extent that Sheehan and Rentz want to protect an interest, Sheehan and

- 5 -

Rentz may assert against Air-Tech a third party claim; and (5) that as general partners of Air-Tech Sheehan and Rentz can protect Air-Tech's interests.

In this instance, the defendants fail to show that Air-Tech is an indispensable party under Rule 19. Although joinder of Air-Tech is feasible, Air-Tech's absence neither precludes complete relief amongst the parties nor subjects Sheehan and Rentz to the risk of inconsistent obligations. To the extent that Tri-Gas fails to prove a claim against Sheehan and Rentz, a final judgment in this action precludes Tri-Gas from pursuing Sheehan and Rentz in a subsequent action against Air-Tech. Because Air-Tech possesses no interest distinct from the interest of Air-Tech's general partners, Sheehan and Rentz, Air-Tech's absence from this action will not preclude protection of Air-Tech's interests.

### *3. Aiding & Abetting/Conspiracy Claims Against Sheehan & Rentz*

The defendants argue that the claims for aiding and abetting and for conspiracy "fail as a matter of Florida partnership law" because only Air-Tech bears responsibility for the breach of a fiduciary obligation to Tri-Gas. Tri-Gas argues that Sheehan and Rentz cannot escape personal liability "by hiding behind Air-Tech."

Section 620.1404, Florida Statutes, provides that:

> An obligation of a limited partnership incurred while the limited partnership is a limited liability limited partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the limited partnership. A general partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or acting as a general partner . . . .

Section 620.2001 permits a partner to assert an action against another partner for "legal or equitable relief . . . to enforce the rights and otherwise protect the interests of the

- 6 -

partner, including rights and interests under the partnership agreement or this act or arising independently of the partnership relationship." Although a general partner bears no personal liability "solely by reason of being or acting as a general partner," a general partner is susceptible to personal liability for his tortious conduct regardless of whether liability attaches to the limited liability limited partnership. See Buckner v. Luther Campbell, 2010 WL 5058314, *2 n.2 (S.D. Fla. 2010) ("Florida courts uniformly hold that if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions.").

In this instance, Tri-Gas claims that Sheehan and Rentz engaged in intentionally tortious conduct and caused injury to Tri-Gas (1) by aiding and abetting Air-Tech's breach of a duty, (2) by conspiring to commit fraud, and (3) by tortiously interfering with Tri-Gas and Air-Tech's business relationship. Both Sheehan and Rentz, as general partners and officers of the partnership, are susceptible under Florida law to Tri-Gas's claim.

### *4. Tortious Interference*

The defendants cite Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC, 2009 WL 382273 (M.D. Fla. 2009) and argue that the tortious interference claim fails because Sheehan and Rentz acted "in furtherance of Air-Tech's interest." Tri-Gas responds that, if an employee of a party to a contract "acts solely with ulterior purposes . . . and without

an honest belief that his or her actions would benefit his or her employer," the employee becomes liable for unlawful interference with the employer's contract.

PDM Bridge finds that no tortious interference occurs if an employee acting in the best interest of the employer induces the employer to breach a contract. However, if the employee's act is detrimental to the employer's interest and motivated by an ulterior purpose, the employee becomes liable for tortious interference. In other words, the employee becomes a "stranger to the business relationship" by acting outside the scope of employment." Accordingly, the claim for tortious interference in PDM Bridge failed because the plaintiff alleged that the employee acted "within the course and scope of his employment and/or agency with PDM" and failed to allege an ulterior purpose.

In this instance, Tri-Gas alleges (1) that Sheehan and Rentz possessed knowledge of both the partnership and of Tri-Gas's "reasonable expectation of economic advantage based on its ownership interest," (2) that Sheehan and Rentz intentionally interfered with Tri-Gas's right to receive an economic advantage of the partnership, (3) that Tri-Gas in fact suffered a loss of economic advantage, and (4) that Sheehan's and Rentz's conduct was "wanton and willful and in complete disregard to Tri-Gas's rights . . . ." However, Tri-Gas alleges neither that Sheehan and Rentz acted to the detriment of Air-Tech nor that Sheehan and Rentz possessed "an ulterior purpose" nor that Sheehan and Rentz acted outside the scope of employment. Accordingly, Tri-Gas fails to state a claim for tortious interference.

*5. Conversion*

The defendants argue that Tri-Gas's claim for conversion fails because Tri-Gas alleges no demand for return of Tri-Gas's $18 million. Tri-Gas argues that, if the "taking" is unlawful, no demand is necessary.

Conversion occurs if a plaintiff with a right to possession demands the return of certain property but the defendant refuses to relinquish the property. Senfeld v. Bank of Nova Scotia Trust Co., 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984). The "demand and refusal" constitutes evidence of conversion but is not necessary to prove conversion if the plaintiff can otherwise demonstrate conversion. "'The purpose of proving a demand for property by a plaintiff and a refusal by a defendant to return [the property] in an action for conversion is to show the conversion. The generally accepted rule is that demand and refusal are unnecessary [if] the act complained of amounts to a conversion regardless of whether a demand is made.'" 450 So. 2d at 1161 (quoting Goodrich v. Malowney, 157 So. 2d 829, 832 (Fla. 2d DCA 1963)). If either the "taking" is unlawful or a demand is futile, no demand is necessary. Mullenmaster v. Newbern, 679 So. 2d 1186, 1187 (Fla. 4th DCA 1996); Shelby Mut. Ins. Co. v. Crain Press, Inc., 481 So. 2d 501, 503 (Fla. 2d DCA 1985).

In this instance, Tri-Gas alleges that Tri-Gas assigned Tri-Gas's partnership interest to Veteran's without a disclosure from Veteran's, Sheehan, or Rentz as to the "existence of the [a]sset [p]urchase [a]greement and sale of the [p]artnership's assets to Airgas . . . ." The sale allegedly violated Section 3.3(a) of the partnership agreement because Air-Tech failed to obtain Tri-Gas's consent to the sale of assets. Thus, Tri-Gas

- 9 -

claims that the "taking" was unlawful and without either the knowledge or consent of Tri-Gas. Accordingly, Tri-Gas need not allege a "demand and refusal" to state a claim for conversion.

### *6. Unjust Enrichment*

The defendants cite <u>Mario v. Centex Homes</u>, 2006 WL 560150 (M.D. Fla. 2006), and argue that the existence of a contract (i.e., the assignment of Tri-Gas's partnership interest) precludes a claim for unjust enrichment. In response, Tri-Gas argues (1) that a contract precludes a claim of unjust enrichment only if the claim involves the "subject of the . . . contract" and (2) that the profit from the "surreptitious sale to Airgas was not the subject matter of th[e] [a]ssignment."

"A party cannot recover under an implied contract theory [if] an enforceable express contract exists between the parties regarding the same subject matter." <u>Miles v. Tenn. River Pulp & Paper Co.</u>, 862 F.2d 1525, 1529 (11th Cir. 1989). In this instance, the assignment involves the sale of Tri-Gas's partnership interest and not the sale of the partnership's assets. Accordingly, Tri-Gas may assert a claim for unjust enrichment based on the sale of the partnership's assets.

### *7. Aiding & Abetting Fraud*

The defendants argue that the Florida Supreme Court has not recognized an action for "aiding and abetting fraud" and that "[a]bsent such authority" Tri-Gas cannot state a claim. Tri-Gas responds and cites <u>ZP No. 54 Ltd. Partnership v. Fidelity & Deposit Co.</u>, 917 So. 2d 368, 371-72 (Fla. 5th DCA 2005) (finding that "aiding and abetting fraud may well be a valid cause of action in Florida"), and <u>Hogan v. Provident</u>

Life & Accident Ins. Co., 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) (Fawsett, J.) ("A cause of action for aiding and abetting a breach of fiduciary duty exists under Florida law"). Based on the applicable precedent cited by Tri-Gas, Tri-Gas appears to state a claim recognized under Florida law. Accordingly, the defendants' argument for dismissal is unpersuasive.

### Conclusion

The defendants' motion (Doc. 7) to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and count five (tortious interference) is **DISMISSED WITHOUT PREJUDICE**. The plaintiff's request for leave to amend is **GRANTED**, and the plaintiff may file an amended complaint no later than **May 23, 2011**.

ORDERED in Tampa, Florida, on May 13, 2011.

*[signature]*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE